GRAVES v. HOLLAN.

Opinion delivered February 22, 1932.

*Gaughan, Sifford, Godwin & Gaughan,* for appellant.
*Snodgress & Snodgress,* for appellee.

SMITH, J. This suit was brought in equity by appellee, Hollan, against appellant, Graves, to require an accounting of the profits earned in the purchase and sale of certain oil leases.

Appellee was an automobile salesman at Camden when drilling for oil began in that vicinity, and he became interested in the purchase and sale of oil leases, but was without capital on which to operate. He gave the following account of the beginning of his relations with Graves. He had contracted to buy some oil leases, for which he was unable to pay, and the persons from whom he had contracted to purchase were demanding their money. He made Graves a proposition that he would buy and resell the leases, and Graves should advance the money to pay for them, and if a profit were made it should be divided equally. His profit was dependent upon the resale of such leases as he bought. He told Graves that he had a contract for the purchase of a lease from a man named Poindexter for the sum of a thousand dollars, and that he had a contract to resell a half interest in the lease for the same amount.

Graves borrowed a thousand dollars from a bank at Camden, and the loan was made on his credit, although he required Hollan to join with him in the execution of the note to the bank covering this loan. The thousand dollars thus borrowed was deposited in the bank, and four hundred dollars of it was used to purchase another lease, referred to by the parties as the Wilson lease. The thousand-dollar note to the bank was payable in sixty days, and when it matured it was renewed by Graves alone, and later paid by him. Graves made Hollan a personal loan of sixty dollars and, in addition, paid all the expenses incident to the purchase of the leases, including the cost of the abstracts and the fees of the attorney for their examination.

At the time these leases were purchased a well, known as the Cox well, was being drilled on land nearby, and it was the drilling of this well which gave the leases their value. The title to both the Poindexter and Wilson

leases was taken in the name of Graves alone, and Hollan said this was done because Graves and his wife were on the scene, whereas Hollan's wife lived in Little Rock, and in buying and selling leases time was a material element, and they wished to avoid any delay in making a resale.

The Cox well came in dry, and this fact destroyed the value of both the Poindexter and Wilson leases, and they remained valueless until 1929, when another well, known as the McDonald well, in that vicinity was brought in as a producing well. This gave value to the Poindexter lease, and it was sold for $3,200, and this suit was brought to recover a half interest in the profit earned in its sale.

Appellee left Camden, and Graves testified that he neither saw nor heard anything further from him until after the McDonald well had been brought in. Hollan testified that he applied to Graves in 1923 for a statement of their account and offered to pay one-half of Graves' loss. Graves denied this. He testified that in March, 1929, he again applied to Graves for a statement, and was corroborated in this respect by a witness named Banks. Graves denied this statement also.

The Poindexter lease was dated October 22, 1922. The Wilson lease was dated November 2, 1922. The sale of the Poindexter lease, out of which the profit was made, was executed on March 13, 1929. The testimony establishes the fact that Hollan was to buy and resell the leases, and he and Graves were to share in the net profits, and a decree was rendered in which it was held that Hollan was entitled to share in the net profits which arose from the sale of the Poindexter lease, and this appeal is from that decree.

We have concluded that this decree is erroneous and should be reversed for the following reasons. Hollan himself testified that time was an important element in the purchase and sale of oil leases, especially in unproved territory such as this was at the time the Cox well was being drilled. Both the Poindexter and Wilson leases had value while the Cox well was being drilled. Neither had value after that well came in dry, and they continued

to be valueless until the McDonald well came in as a producer nearly seven years later. In the meantime, the joint note of Hollan and Graves for a thousand dollars matured, and was renewed, and was later paid by Graves alone. Hollan appears not to have been called upon to pay any portion of the note. Indeed, his original contract did not contemplate that he should furnish the money. The money was borrowed on Graves' credit. It was Hollan's duty to resell the leases, and he did not do so except the undivided half interest in the Poindexter lease, the proceeds of which sale were used in the purchase of the Wilson lease. The balance was used in the part payment of the Poindexter lease. Nothing was coming to Hollan unless he sold the leases at a profit, and, except as stated, he did not resell either of them.

Graves paid the balance due the bank on the note and the expenses incurred in the purchase of the leases, including the cost of the abstracts and the attorney's fees, amounting to $714.66. Up to the time of the resale of the Poindexter lease, Graves had therefore a net loss in the transaction of $714.66. The parties differ as to whether Hollan agreed to share this loss, but we accept Graves' statement that he did not. We are led to this conclusion largely from a consideration of the fact that Hollan was under no legal obligation to do so under the terms of their original contract. Hollan's contract did not obligate him to furnish the purchase money, but did require him to resell the leases. It was necessarily contemplated that this should be done expeditiously, for the reason stated that the value of these leases changed very rapidly.

The facts, as we find them to be, are that, after the Cox well came in dry, appellee ceased to be connected with the transaction and left the scene, and returned only a few times, and then not on account of these leases. His purchases appeared to be without value or prospect of profit. He admits that he did not sell the leases, and he did not testify that he attempted to do so, but he testified that he and one Reynolds discussed the question of drilling on the Poindexter lease themselves. This ap-

pears, however, to have been a mere discussion, to which Graves was not a party, and nothing came of it. At any rate, Graves was under no obligation to make this additional investment.

The thousand-dollar joint note, the proceeds of which furnished the capital with which the first lease was purchased, matured, and was renewed by Graves alone, and was later paid by him, and had become barred by the statute of limitations when the McDonald well came in and the lease was sold. We conclude therefore that the demand of Hollan for a share in the profits is stale, and that it is now inequitable to enforce it. He did not perform his agreement to resell the leases, and left his associate to bear alone a loss of $714.66 which Graves said he considered he had sustained during all the six years which elapsed after he had paid the note before he sold the lease.

We conclude therefore that the decree of the court below should be reversed, and it is so ordered, and, as the cause appears to have been fully developed, it will be remanded with directions to dismiss it.

KIRBY, J., dissents.